UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 18-1400 JGB (SHKx)** | Date | March 28, 2019 |
| Title | *Innovative Nutraceuticals, LLC v. United States of America* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendant's Motion to Dismiss Plaintiff's First, Second, and Fourth Causes of Action; (2) DENYING Defendant's Motion to Dismiss Plaintiff's Third Cause of Action; (3) DISMISSING Plaintiff's First and Second Causes of Action WITHOUT Leave to Amend; (4) DISMISSING Plaintiff's Fourth Cause of Action WITH Leave to Amend (IN CHAMBERS); and (5) VACATING the April 1, 2019 Hearing

Before the Court is Defendant the United States of America's Motion to Dismiss the Complaint. ("Motion," Dkt. No. 20.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the briefs filed in support of, and in opposition to, the Motion, the Court GRANTS Defendant's motion to dismiss, DISMISSES Plaintiff's complaint with leave to amend in part, and VACATES the April 1, 2019 hearing.

## I.   BACKGROUND

Plaintiff Innovative Nutraceuticals, LLC filed a complaint in this Court on July 2, 2018. ("Complaint, Dkt. No. 1.) The Complaint alleges that Defendant violated the Administrative Procedure Act, 5 U.S.C. § 701 et seq., and the Fifth Amendment Due Process Clause by seizing and destroying cannabis products imported from Spain. It seeks the following relief on behalf of Plaintiff and all similarly situated individuals: (1) an injunction and/or declaratory relief ordering the United States government not to detain, seize, summarily forfeit, or destroy any future shipments of hemp plant materials containing cannabidiol ("CBD") and/or 0.3% or less of

tetrahydrocannabinol ("THC"); (2) an injunction and/or declaratory relief ordering Defendant to provide timely notice and a hearing to owners and shippers of detained or seized hemp materials; (3) declaratory and injunctive relief ordering Defendant not to destroy and to return all seized hemp materials; and (4) monetary reimbursement for all hemp materials seized and destroyed by Defendant.

Defendant filed the present Motion on December 17, 2018. (Dkt. No. 20.) On December 28, 2018, the Court granted Defendant's motion to stay the case due to the lapse in appropriations to the Department of Justice. (Dkt. No. 22.) On February 26, 2019, the Court lifted the stay and reset the briefing and hearing dates. (Dkt. No. 24.) Plaintiff opposed Defendant's Motion on March 1, 2019. (Dkt. No. 25.) Defendant replied on March 18, 2019. (Dkt. No. 26.)

## II.    LEGAL STANDARD

Defendant moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, without which a federal district court cannot adjudicate the case before it. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994). The party asserting federal subject matter jurisdiction bears the burden of proving its existence. Chandler v. State Farm. Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010.) Because Federal courts do not have subject matter jurisdiction over cases which or moot or for which plaintiff lacks standing, mootness and standing are properly raised on a motion to dismiss under Rule 12(b)(1). Foster v. Carson, 347 F.3d 742, 745 (9th Cir. 2003); Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011).

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Factual allegations must be enough to "raise a right to relief above a speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Id.; see Horosny v. Burlington Coat Factory, Inc., 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015). In considering a Rule 12(b)(6) motion to dismiss, a court accepts the plaintiff's factual allegations in the complaint, and construes the pleadings in the light most favorable to the non-moving party. See Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

## III.    ALLEGED FACTS

Plaintiff is an importer of crushed seed and stalk materials cultivated from industrial hemp, a strain of the cannabis sativa L. plant, grown in Spain. (Comp. ¶¶ 1, 11.) Plaintiff uses

these materials to produce products containing the compound CBD. (Id. ¶ 8.) Documentation provided by Plaintiff's supplier accompanying each shipment states that the material contained in each package was cultivated from seeds certified as industrial hemp in Spain. (Id. ¶ 12.) The cannabis plant material in Plaintiff's shipments contained less than 0.3% THC by weight, and test results from the supplier itself indicated that the material tested positive for up to 0.2% of THC. (Id. ¶¶ 19, 22.) Before receiving shipments from Spain, Plaintiff applied to the United States Department of Agriculture ("DOA") for a permit to import industrial hemp materials but was informed by the DOA Animal and Plant Inspection Service that no permit was required for lawful shipment of these materials. (Id. ¶ 23.)

On November 30, 2015, Plaintiff imported hemp plant materials containing 0.3% or less of THC by weight from L&M Natural Hemp in Spain. (Comp. ¶ 40.) The shipment, which consisted of four packages totaling 31 kilograms of ground industrial hemp material grown in Spain, arrived at Los Angeles International Airport ("LAX") on December 6, 2015 and were seized by the Department of Homeland Security ("DHS"). (Id. ¶¶ 40, 41.) The U.S. Department of Customs and Border Protection ("CBP") tested the shipment and found that it tested positive for CBD. (Id. ¶ 41.) On October 28, 2016, Plaintiff filed a petition with CBP seeking administrative review of the seizure. (Id. ¶ 42.) CBP denied Plaintiff's petition, stating that it had determined that CBD is a naturally occurring constituent of marijuana and thus meets the definition of marijuana under the Controlled Substances Act ("CSA"). (Id. ¶ 43.) CBP further stated that "hemp flowers" are not excluded from the definition of marijuana, though it provided no evidence of the THC percentage of the shipment or that hemp flowers were contained within the shipment. (Id.) Plaintiff believes Defendant destroyed the hemp materials contained in this shipment. (Id. ¶ 44.)

On January 25, 2017, in Newark, New Jersey, Defendant seized another shipment of crushed industrial hemp material imported from Spain. (Id. ¶ 45.) On April 7, 2017, Plaintiff learned that the shipment had been destroyed by Defendant because it allegedly tested positive for marijuana. (Id. ¶ 48.) Defendants were not provided with notice or a hearing at which to contest the seizure or destruction of the hemp shipment and were not reimbursed for the destroyed shipment. (Id. ¶¶ 49, 51.)

Another shipment of crushed hemp plant material containing 0.3% or less of THC was detained by CBP on or about November 25, 2017. (Comp. ¶ 53.) Plaintiff was informed by CBP in a February 26, 2018 email that CBP had summarily forfeited the shipment because testing allegedly revealed the presence of "THC extracts" in the shipment. (Id. ¶ 56.) Plaintiff attempted to contest this determination and to obtain the test results referenced in the February 26, 2018 email, but received no response from CBP. (Id. ¶ 58.) Plaintiff believes that CBP destroyed this shipment of hemp material. (Id. ¶ 59.)

On or about March 14, 2018, CBP seized a shipment of 50 kilograms of hemp plant materials containing 0.3% or less of THC at the Louisville, Kentucky airport. (Comp. ¶ 60.) CBP agreed not to destroy the materials and on June 20, 2018 informed Plaintiff that the shipment may be released upon the submission of a "Hold Harmless Agreement" agreeing not to

sue CBP for damages related to the seizure, with Plaintiff to bear the costs of delivery or retrieval of the seized goods. (Id. ¶ 63.)

## IV.  DISCUSSION

Defendant argues that Plaintiff has failed to state a claim for violations of the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment; that Plaintiff's claims for injunctive and declaratory relief have been rendered moot by the Agriculture Improvement Act of 2018, Public Law No. 115-334, 132 Stat 4490 ("2018 Farm Bill"); and that Plaintiff's claim for damages is barred by sovereign immunity. The Court will address these arguments in turn.

**A.  Failure to State Claim**

Defendant's principle argument is that Plaintiff has failed to state a claim for violations of the APA and Due Process Clause because the goods which CBP seized and destroyed were contraband under the CSA and therefore subject to summary forfeiture. Under the CSA, Schedule I controlled substances are "deemed contraband and seized and summarily forfeited to the United States." 21 U.S.C. § 881(f). The government argues that the summary forfeiture of contraband under § 881(f) does not require the application of procedures otherwise applicable to the administration of administrative forfeiture proceedings. See Conkey v. Reno, 885 F. Supp. 1389, 1395 (D. Nev. 1995) ("Any construction interpreting the "summary" forfeiture provision of § 881(f)(1) or the destruction provision of § 881(f)(2) to require application of administrative forfeiture proceedings is nonsensical."). Further, it argues that, because no person can have a legally protected property interest in contraband, Plaintiff may not bring a due process challenge to the seizure of Schedule I controlled substances. See United States v. Jeffers, 342 U.S. 48, 53 (1951); Conservation Force v. Salazar, 677 F. Supp. 2d 1203, 1210 (N.D. Cal. 2009), aff'd, 646 F.3d 1240 (9th Cir. 2011)

The Court is skeptical of Defendant's claim that a party may not bring a due process challenge to the process by which an imported good is determined to be contraband. However, it need not reach this question because, taking the factual allegations in the Complaint as true, Defendant has not demonstrated that the goods seized by CBP were in fact contraband. The CSA defines marijuana, a Schedule I controlled substance, as: "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 802(16)(A). The definition of marijuana does not include "the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination." 21 U.S.C.A. § 802(16)(B)(ii). Those portions of the cannabis plant which are not included in the definition of marijuana are not regulated under the CSA and are not contraband. Hemp Indus. Ass'n. v. Drug Enf't Admin., 357 F.3d 1012, 1017 (9th Cir. 2004) ("Hemp II"). Since certain portions of the cannabis plant are not contraband subject to summary seizure, to decide whether Plaintiff has stated a claim the Court need only

determine whether, from the face of the Complaint, it is apparent that the shipments seized by CBP contained parts of the cannabis plant which are defined as marijuana under the CSA.

Taking the factual allegations in the Complaint as true, the Court cannot conclude that the shipments seized by CBP contained marijuana. The Complaint alleges that the industrial hemp products imported by Plaintiff "have consisted entirely of crushed seed and stalk materials cultivated from industrial hemp lawfully grown in Spain." (Comp. ¶ 11.) Stalks are specifically excluded from the definition of marijuana. While there remains some ambiguity as to whether the crushed cannabis seed contained in Plaintiff's shipments were sterilized and therefore also fell outside the definition of marijuana, this is primarily a factual question. Since at this stage the Court must construe the pleadings in the light most favorable to the Plaintiff, it cannot conclude as a matter of law that pulverized cannabis seeds fall under the CSA definition of marijuana. See Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).

The government concedes that the CSA definition of marijuana makes no reference to the percentage of THC contained in the plant. Still, it persists in arguing that Plaintiff's allegations that its shipments tested positive for up to 0.2% of THC, (Id. ¶¶ 19, 22), establishes that they contained plant material which was, in fact, marijuana under the CSA and therefore subject to summary forfeiture. As the parties agree, non-marijuana cannabis material inevitably contains "trace" quantities of THC. However, while Plaintiff argues that the 0.2% THC content of its shipments is consistent with such "trace" amounts, the government argues that this far exceeds the percentages of THC present in non-marijuana portions of the cannabis plant, which typically contains approximately "2 parts per million" THC by weight – orders of magnitude less THC than that alleged by Plaintiff. See DEA, Diversion Control Division, "Clarification of the New Drug Code (7350) for Marijuana Extract," https://deadiversion.usdoj.gov/schedules/marijuana/mextract7350.html (noting that non-marijuana portions of the cannabis plant contain "typically, only parts per million" of THC); Hemp Indus. Ass'n v. Drug Enf't Admin., 333 F.3d 1082, 1085 (9th Cir. 2003) ("Hemp I")(noting that "[h]emp seeds and oil typically contain minuscule trace amounts of THC, less than 2 parts per million in the seed and 5 parts per million in the oil."). Thus, because the 0.2% THC content of Plaintiff's shipment far exceeded the trace amounts which one would expect to find in non-marijuana cannabis, Defendant asks the Court to conclude that this shipment must have contained marijuana.

The Court cannot conclude that, as a matter of law, plant material containing as much as 0.2% THC necessarily falls within the CSA definition of marijuana. The CSA defines marijuana only in reference to specific portion of the cannabis plant, not in reference to its THC content. The Ninth Circuit has found that "any THC occurring naturally within Cannabis is banned only if it falls within the Schedule I definition of 'marijuana,'" which is defined by reference only to specific portions of the cannabis plant. Hemp II, 357 F.3d at 1013. Thus, the DEA's "relevant rules and regulations may be enforced only insofar as they ban the presence of marijuana or synthetic THC," not naturally occurring THC in non-marijuana portions of the cannabis plant.

Id.[1] Courts have consistently found that naturally-occurring THC content of marijuana is irrelevant to whether it falls under the CSA. See Monson v. Drug Enf't Admin., 522 F. Supp. 2d 1188, 1199–200 (D.N.D. 2007), aff'd, 589 F.3d 952 (8th Cir. 2009) (entire cannabis plants, which necessarily included flowers, fell under CSA definition of marijuana "regardless of their THC concentration"); United States v. Coslet, 987 F.2d 1493, 1496 (10th Cir.1993) (presence of THC "not required for a plant to be considered a marijuana plant"); New Hampshire Hemp Council, Inc. v. Marshall, 203 F.3d 1, 6 (1st Cir. 2000) (low THC content "far from conclusive" as to whether full cannabis plant fell under CSA definition of marijuana). The Court is aware of no legal authority supporting the proposition that a plant product may be found to be marijuana based solely on the presence of naturally occurring THC.[2] While it may ultimately prove to the case that Plaintiff's shipments could only test positive for 0.2% THC if they in fact contained marijuana or marijuana extracts, this is a factual dispute which is inappropriate for resolution at the pleading stage. Melissa Rivas v. Physician Laboratories, Inc., et al., 2018 WL 6133722, at *6 (C.D. Cal. Oct. 24, 2018) ("'Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations' for purposes of a motion to dismiss for failure to state a claim.") (quoting Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001). The Court therefore DENIES Defendant's motion to dismiss Plaintiff's Complaint on the grounds that it fails to state a claim under Rule 12(b)(6).

---

[1] Plaintiff conflates the question of the legality of "industrial hemp" and the non-marijuana portions of the cannabis plant. On February 7, 2014, President Obama signed the Agricultural Act of 2014, Pub. L. No. 113-7, which provided that, notwithstanding the CSA, institutions of higher education and state departments of agriculture "may grow or cultivate industrial hemp" for certain limited purposes. See 7 U.S.C. § 5940(a). The Act defined "industrial hemp" as any part of the cannabis sativa L. plant with a THC concentration of "not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 5940(b). Plaintiff has not alleged, and the Court sees no reason to conclude, that it is an institution of higher education or a state department of agriculture under the 2014 Agricultural Act. The 2014 Act therefore did not authorize Plaintiff to grow or import industrial hemp, which may include any part of the cannabis plant containing less than 0.3% THC including portions of the plant falling under the CSA definition of marijuana. Thus, the only portion of the cannabis plant which Plaintiff could permissibly import is that which is not included in the CSA definition of marijuana, which makes no mention of THC content.

[2] Defendant argues that the passage 2018 Farm Bill, discussed in IV(B), infra, further underscores that the CSA definition of marijuana "did not exclude marijuana containing concentrations of not more than 0.3% THC," since courts must presume Congress it intends changes to legislation to have real and substantial effect. However, the 2018 Farm Bill amended the CSA definition of marijuana to exclude all parts of the cannabis plant containing less than 0.3% THC. While this has the real and substantial effect of permitting the importation all portions of the cannabis plant containing less than 0.3% THC, including those portions, such as the flower, which would otherwise be defined as marijuana, this change has no clear connection to the THC contents of portions of the cannabis plant which are not defined as marijuana under the pre-2018 Farm Bill CSA.

## B. Mootness of Claims for Prospective Relief

Plaintiff's first three causes of actions seek injunctive and declaratory relief (1) ordering the United States government not to seize or destroy any future shipments of hemp plant materials containing 0.3% or less THC and (2) ordering the government to adopt certain notice and hearing procedures upon seizure of seized hemp materials. (Compl.) These causes of action have been mooted by Agriculture Improvement Act of 2018, signed into law by President Trump on December 20, 2018. Pub. L. 115-334 ("2018 Farm Bill"). Section 12619 of the 2018 Farm Bill amended the CSA definition of marijuana so that it now includes an exemption for hemp, defined as "any part" of the Cannabis sativa L. plant "with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." Id. Under this new exemption, any future shipments of industrial hemp product containing less than 0.3% THC by dry weight will clearly fall outside the CSA definition of marijuana and will not be subject to seizure.

Plaintiff argues that prospective relief is still necessary because it "appears the government will continue seizing imported hemp without providing due process" since CBP officials in California, Kentucky, and New Jersey have treated Plaintiff's shipments in substantially different ways. (Opp. at 16.) At bottom, however, Plaintiff's Complaint challenges only artifacts of the pre-2018 Farm Bill statutory scheme, which, as discussed above, left uncertain whether some cannabis products with THC concentrations of between 0.2% and 0.3% THC fell under the CSA definition of marijuana. Any uncertainty as to the legal status of Plaintiff's shipments under the pre-2018 Farm Bill regime has since been eliminated by the Bill's amendment of the CSA's definition of marijuana. Plaintiff's claims for prospective relief have thus been rendered moot. See Rocky Mountain Farmers Union v. Corey, 913 F.3d 940, 949 (9th Cir. 2019) ("a case is moot when the challenged statute is repealed, expires, or is amended to remove the challenged language") (quoting Log Cabin Republicans v. United States, 658 F.3d 1162, 1166 (9th Cir. 2011). What's more, the 2018 Farm Bill, by excluding cannabis containing less than 0.3% THC from the definition of marijuana, essentially mirrors the injunctive and declaratory relief requested by Plaintiff in the Complaint. Since these shipments will no longer be subject to summary forfeiture under 21 U.S.C. § 881(f), Plaintiff's due process objections to the lack of notice or hearing provided upon seizure of its shipments are also mooted. See Rocky Mountain Farmers Union, 913 F.3d at 949 ("Where there is nothing left of a challenged law to enjoin or declare illegal, further judicial action would necessarily be advisory and in violation of the limitations of Article III"). The Court also finds that, because of the recent amendment of the CSA, the seizure of Plaintiff's shipments does not fall under the mootness exception for wrongs "capable of repetition yet evading review," since Plaintiff has not established that it will be subject to the same injury in the future beyond a "mere physical or theoretical possibility." Murphy v. Hunt, 455 U.S. 479, 482 (1982).

Because Plaintiff's claims for prospective relief have been mooted, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's first and second causes of action. The Court finds that amendment of these claims would be futile and so dismisses these claims WITHOUT leave to amend. See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246–47 (9th Cir.1990).

### C. Plaintiff's Claims for Retrospective Relief

Plaintiff seeks two forms of relief which do not appear to have been mooted by the passage of the 2018 Farm Bill: monetary reimbursement for all hemp materials seized and destroyed by Defendant and declaratory and injunctive relief ordering Defendant not to destroy and to return seized hemp materials.

#### (1) Reimbursement for Seized Materials

Plaintiff seeks monetary damages for seized and destroyed hemp materials but identifies no waiver of sovereign immunity allowing it to sue for monetary damages. "Sovereign immunity shields the United States from suit absent a consent to be sued that is unequivocally expressed." United States v. Bormes, 568 U.S. 6, 9 (2012) (internal quotation omitted). The Administrative Procedure Act does not provide a waiver of sovereign immunity for damages. See 5 U.S.C. § 702 (granting the consent of the United States to suit in actions "seeking relief other than monetary damages"); Marshall Leasing, Inc. v. United States, 893 F.2d 1096, 1100 (9th Cir. 1990) (the APA waives sovereign immunity for equitable claims but does not allow plaintiff to recover monetary damages from the government in the alternative). While Plaintiff cites the Little Tucker Act, 28 U.S.C. § 1346(a)(2), that act is a jurisdictional provision which does not create any substantive rights. Bormes, 568 U.S. at 10. The Court therefore GRANTS Defendant's motion to dismiss Plaintiff's third cause of action for monetary damages WITH leave to amend.

#### (2) Return of Seized Goods

In addition to monetary relief, Plaintiff's seeks declaratory and injunctive relief ordering Defendant to return seized goods which it has not destroyed. Based on the facts alleged in the Complaint, it appears only the March 14, 2018 shipment of 50 kilograms of hemp materials which were seized at the Louisville, Kentucky airport remain undestroyed. While the enactment of the 2018 Farm Bill rendered Plaintiff's other claims for injunctive relief moot, Defendant has presented no argument as to why Plaintiff's third cause of action, seeking the return of goods seized prior to the passage of that Bill, should be dismissed. Defendant's Motion to Dismiss Plaintiff's third cause of action is DENIED.

### V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's first, second, and fourth causes of actions is GRANTED. Plaintiff's first and second causes of action are DISMISSED WITHOUT leave to amend. Plaintiff's fourth cause of action, for monetary damages, is DISMISSED WITH leave to amend. Defendant's Motion to Dismiss Plaintiff's third cause of action is DENIED. The hearing scheduled for April 1, 2019 is VACATED.

**IT IS SO ORDERED.**