NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
JASMIN YANG (Cal. Bar No. 255254)
Assistant United States Attorney
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-8827
        Facsimile: (213) 894-7819
        E-mail: Jasmin.Yang@usdoj.gov

Attorneys for Defendant
United States of America

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| INNOVATIVE NUTRACEUTICALS, LLC,<br><br>              Plaintiff,<br><br>       v.<br><br>UNITED STATES OF AMERICA, KEVIN K. MCALEEENAN, in his official capacity as Acting secretary of the Department of Homeland Security and former Commissioner of U.S. Customs and Border Protection and in his individual capacity; Former DHS Secretary JOHN F. KELLY, in his official and individual capacity; Former DHS Secretary ELAINE DUKE, in her official and individual capacity; Former DHS Secretary KIRSTJEN NIELSEN, in her official and individual capacity; ROBERT P. THIERRY, in his official an individual capacity as Director of Fines, Penalties, and Forfeitures for Customs in the Los Angeles, California area, and his individual capacity; and UNKNOWN NAMED EMPLOYEES OF THE DEPARTMENT OF HOMELAND SECURITY AND U.S. CUSTOMS AND BORDER | No. CV 5:18‑cv‑01400‑JGB‑SHK<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; DECLARATION OF JASMIN YANG**<br><br>Hearing Date:   November 18, 2019<br>Hearing Time:   9:00 a.m.<br><br>Honorable Judge Jesus G. Bernal<br>United States District Judge |

PROTECTION, in their official and
individual capacities,

                Defendants.

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                     PAGE

NOTICE OF MOTION AND MOTION TO DISMISS .................................................... vii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.    INTRODUCTION ........................................................................................................ 1

II.   STATEMENT OF FACTS .......................................................................................... 2

      A.    2015 Los Angeles Seizure ................................................................................ 3

      B.    2017 New Jersey Seizure ................................................................................. 3

      C.    2017 Los Angeles Seizure ................................................................................ 4

      D.    2018 Louisville Seizure .................................................................................... 4

      E.    Enactment of the Farm Bill Exempts Marijuana Containing Less than
            0.3% THC from the Definition of Marijuana ................................................ 4

      F.    Doctor's Choice Shipments .............................................................................. 5

III.  REGULATORY FRAMEWORK ............................................................................. 5

      A.    Marijuana under the CSA ................................................................................. 5

      B.    Legal status and seizures of Schedule I controlled substances. .................... 7

      C.    Regulatory Framework Governing Civil Asset Forfeiture ........................... 8

IV.   ARGUMENT ............................................................................................................... 9

      A.    Motion to Dismiss Standard ............................................................................ 9

            1.    Lack of Jurisdiction ............................................................................... 9

            2.    Lack of Venue ......................................................................................... 9

            3.    Failure to State a Claim ...................................................................... 10

      B.    Plaintiff Lacks Standing to Bring Claims for Injunctive Relief Under
            the Administrative Procedure Act. ................................................................ 11

      C.    The Court Lacks Venue for the Third and Sixth Causes of Action
            with Respect to Claims Arising out of the New Jersey, Kentucky, and
            Doctor's Choice Seizures. ............................................................................. 13

      D.    Plaintiff's Fails to State a Claim Under the Little Tucker Act in its
            Fourth Cause of Action ................................................................................. 14

1.    Plaintiff Fails to Plead the Existence of a Basis for Money Damages that Would Give the Court Jurisdiction under the Little Tucker Act ........................................................................ 14

2.    18 U.S.C. § 983(e) is the Exclusive Remedy for Allegedly Wrongful Seizures ................................................................ 16

3.    The Court Lacks Jurisdiction to Review the Merits of the Forfeitures ..................................................................... 17

E.    Plaintiff Fails to State a Claim under the FTCA in its Fifth Cause of Action ........................................................................ 19

1.    CAFRA is the Exclusive Remedy ..................................... 19

2.    The Detention of Goods Exception to the FTCA Bars Plaintiff's Claim .......................................................... 19

F.    The Kentucky Seizure Cannot Form the Factual Basis for Any of Plaintiff's Claims ................................................................. 21

1.    Plaintiff Released and Waived All of its Claims Related to the Kentucky Seizure in the Hold Harmless Agreement ....................... 21

2.    The Third and Sixth Causes of Action Must be Dismissed Because Plaintiff Admits CBP Remitted Its Goods. ........................ 22

G.    The 2015 Los Angeles Seizure Cannot Form the Factual Basis for Any of Plaintiff's Causes of Action ........................................... 23

V.    THE COURT SHOULD DENY LEAVE TO AMEND ..................................... 24

VI.    CONCLUSION ............................................................... 25

DECLARATION OF JASMIN YANG ..................................... 26

# **TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                                      <u>PAGE</u>

*Adobe Systems, Inc. v. Childers*,
   2011 WL 566812 at *7 (N.D. Cal. Feb. 14, 2011) ...................... 10

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
   666 F. Supp. 2d 1109 (C.D. Cal. 2009) ........................ 10

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ........................ 10

*Ashcroft v. Iqbal*,
   556 U.S. at 678 ........................ 20

*Bailey v. Patterson*,
   2006 WL 2642543 at *2 (D.S.C. Sept. 13 2000) ........................ 17

*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1988) ........................ 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................ 10

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
   403 U.S. 388 (1971) ........................ iv

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ........................ 11

*Cent. Delta Water Agency v. United States*,
   306 F.3d 938 (9th Cir. 2002) ........................ 12

*Christakis v. Mark Burnett Prods., No. CV086864-GW*,
   2009 WL 1248947 at *4 (C.D. Cal. Apr. 27, 2009) ........................ 21

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ........................ 11

*Cohen-Sanchez v. United States ex rel. Drug Enforcement Admin.*,
   2012 WL 1150760 at *3 (D.N.J. Apr. 5, 2012) ........................ 18

*Collins v. United States*,
   67 F.3d 284 (Fed. Cir. 1995) ........................ 15

*Crocker v. U.S.*,

iii

37 Fed. Cl. 191 (1997) ................................................................... 15, 16

*Diaz v. United States,*
   517 F.3d 608 (2d. Cir. 2008) ...................................................... 18

*Dickerson v. United States,*
   2012 WL 3758454 (N.D. Ohio June 5, 2012) ............................. 13

*Eggleston v. State of Colo.,*
   873 F.2d 242 (10th Cir. 1989) ...................................................... 8

*English v. FBI, No. 8:14-CV-111,*
   2014 WL 3955807 at *2-*3 (D. Neb. Aug. 13, 2014) ................. 23

*Fisher v. United States,*
   402 F.3d 1167 (Fed. Cir. 2005)(en banc) .................................. 15

*Foster v. United States,*
   522 F.3d 1071 (9th Cir. 2008) ................................................... 20

*Friends of the Earth, Inc. v. Laidlaw,*
   528 U.S. 167 (2000) ................................................................... 12

*Galbraith v. County of Santa Clara,*
   307 F.3d 1119 (9th Cir. 2002) ................................................... 11

*Hemp Indus. Ass'n v. Drug Enforcement Admin.,*
   333 F.3d 1082 (9th Cir. 2003) ............................................. 2, 6, 7

*Hodgers-Durgin v. de la Vina,*
   199 F.3d 1037 (9th Cir. 1999) ................................................... 12

*Kingman Reef Atoll Investments, L.L.C. v. United States,*
   541 F.3d 1189 (9th Cir. 2008) ..................................................... 9

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ................................................................... 12

*Malladi Drugs & Pharm., Ltd. v. Tandy,*
   552 F.3d 885 (D.C. Cir. 2009) ................................................... 23

*Matsuo v. United States,*
   416 F. Supp. 2d 982 (D. Haw. 2006) ......................................... 14

*McKinney v. DEA,*
   580 F. Supp.2d 1 (D.D.C. 2008) .......................................... 17, 18

iv

*Mesa Valderrama v. United States*,
   417 F.3d 1189 (11th Cir. 2005) .................................................... 18

*Mikhaylov v. United States*,
   29 F. Supp. 3d 260 (E.D.N.Y. 2014) ...................................... 14, 17

*New Hampshire Hemp Council, Inc. v. Marshall*,
   203 F.3d 1 (1st Cir. 2000) ........................................................ 2, 6

*Piedmont Label Co. v. Sun Garden Packing Co.*,
   598 F.2d 491 (9th Cir. 1979) ...................................................... 10

*Plumhof v. U.S. Customs and Border Patrol*,
   2013 WL 2295666 at *6-*7 (S.D. Cal. May 24, 2013) ................. 23

*S.E.C. v. Credit Bancorp, Ltd.*,
   297 F.3d 127 (2d Cir. 2002) ...................................................... 17

*Smoke Shop LLC v. United States*,
   761 F.3d 779 (7th Cir. 2014) ...................................................... 20

*Spence v. United States*,
   629 F. Supp. 2d 1068 (E.D. Cal. 2009) ...................................... 21

*Spokeo, Inc. v. Robins*,
   136 S.Ct. 1540 (2016) ................................................................ 12

*Sterling v. United States*,
   749 F. Supp. 1202 (E.D.N.Y. 1990) .......................................... 15

*Telesaurus VPC, LLC v. Power*,
   623 F. Supp. 3d 998 (9th Cir. 2010) .......................................... 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .................................................................. 11

*United States v. Hill*,
   2014 WL 971748 at *3 (D. Vt. Mar. 12, 2014) ......................... 18

*United States v. Howell*,
   354 F.3d 693 (7th Cir. 2004) ...................................................... 14

*United States v. King*,
   442 Fed. Appx. 212 (6th Cir. 2011) .......................................... 18

*United States v. Pickett*,
   2011 WL 3876974 at *2 (E.D.N.Y. Sept. 1, 2011) .................... 18

*United States v. Proyect*,
   989 F.2d 84 (2d Cir. 1993) ............................................................... 7

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) .......................................................... 11

*United States v. Shigemura*,
   664 F.3d 310 (10th Cir. 2011) ........................................................ 18

*United States v. Testan*,
   424 U.S. 392 (1976) ........................................................................ 14

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .......................................................... 9

*Williams v. Drug Enf't Admin.*,
   620 Fed.App'x 72 (3d Cir. 2015) ................................................... 17

**FEDERAL STATUTES**

5 U.S.C. §§ 701-706 ........................................................................... 11

18 U.S.C. § 983 ............................................. 1, 8, 14, 15, 16, 17, 19, 24

21 U.S.C. § 801 ................................................................................... 1

21 U.S.C. § 802 ........................................................................... 2, 5, 7

21 U.S.C. § 812 ................................................................................... 7

21 U.S.C. § 881 ............................................................................... 7, 8

21 U.S.C. § 951 ................................................................................... 7

21 U.S.C. § 965 ................................................................................... 7

28 U.S.C. §§ 1346 ............................................................................. 14

28 U.S.C. § 2680 ................................................................. 19, 20, 21

**OTHER**

19 C.F.R. § 162.45 .............................................................................. 8

21 C.F.R. § 1312 ................................................................................. 8

Fed. R. Civ. P. 12 ................................................... iv, v, 9, 10, 11, 14, 22

Federal Rule of Criminal Procedure 41 ....................... iv, 1, 13, 14, 22

37 Fed. Cl. at 195 .............................................................................. 15

H.R. 2, 115th Cong. §§ 10113 (2018) ............................................. 4-5

### NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on November 18, 2019 at 9:00 a.m., as soon thereafter as they may be heard, Defendant United States of America[1] will, and hereby does, move this Court for an order dismissing the first, fourth, fifth, and ninth causes of action of  the second amended complaint, the third and sixth causes of action as they relate to seizures and/or forfeitures outside this district, and all of the causes of action of the second amended complaint as they relate to the 2015 Los Angeles and Kentucky seizures.  This motion will be made in Courtroom 1 of the George E. Brown, Jr. Federal Building and Courthouse before the Honorable Jesus G. Bernal, United States District Judge, located at 3470 Twelfth Street, Riverside, CA 92501.

Defendant brings the motion under Fed. R. Civ. P. 12(b)(1) on the grounds that the Court lacks jurisdiction over Plaintiff's claims because: (1) with respect to the first and ninth causes of action, Plaintiff has failed to allege that it has standing to make claims for future injunctive relief; (2) with respect to the fourth cause of action, Plaintiff has failed to establish an underlying predicate violation for jurisdiction over its Little Tucker Act claim; (3) with respect to the fourth and fifth causes of action, district courts are without jurisdiction to review the merits of a completed forfeiture; and (4) Plaintiff's election of an administrative petition and its subsequent, repeated election to forego judicial forfeiture proceedings related to the 2015 Los Angeles seizure renders this Court without jurisdiction to adjudicate all claims arising out of that seizure.  Plaintiff moves under Fed.R.Civ.P. 12(b)(3) with respect to the third and sixth causes of action because Plaintiff's claims under Federal Rule of Criminal Procedure 41(g) for seizures in Kentucky, New Jersey, Colorado or the Virgin Islands may not be brought in this district.

---

[1] This Motion is being brought by the United States of America and not on behalf of any of the individually named defendants in their individual capacities. Individual defendants Kevin McAleenan, John F. Kelly, Elaine Duke, Kirstjen Nielsen, and Robert Theirry in their individual capacities are anticipated to file a separate response to the SAC as to the Seventh and Eighth causes of action (under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)).

1    Plaintiff fails to state a claim on which relief can be granted (Fed. R. Civ. P.

2  12(b)(6)) because: (1) Plaintiff's Little Tucker Act claim is precluded by the exclusive

3  remedy provisions of Civil Asset Forfeiture Reform Act ("CAFRA"); (2) Plaintiff's

4  FTCA claim is precluded by the exclusive remedy provisions of CAFRA and by the

5  detention of goods exception to the Federal Tort Claims Act; and (3) Plaintiff's claims

6  arising out of the Kentucky seizure have been waived and released by a Hold Harmless

7  Agreement entered into with the United States.

8    This motion is made upon this Notice, the attached Memorandum of Points and

9  Authorities, and all pleadings, records, and other documents on file with the Court in this

10 action, and upon such oral argument as may be presented at the hearing of this motion.

11    This motion is made following a Local Rule 7-3 conference of counsel which was

12 held on September 17, 2019.

13

14  Dated: September 27, 2019          Respectfully submitted,

15                                     NICOLA T. HANNA
                                       United States Attorney
16                                     DAVID M. HARRIS
                                       Assistant United States Attorney
17                                     Chief, Civil Division
                                       JOANNE S. OSINOFF
18                                     Assistant United States Attorney
                                       Chief, General Civil Section
19
                                         /s/ Jasmin Yang
20                                     JASMIN YANG
                                       Assistant United States Attorney
21
                                       Attorneys for Defendant
22                                     United States of America

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Marijuana, along with its extracts and derivatives, is a controlled substance under Federal law.  As a Schedule I controlled substance under the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. ("CSA"), marijuana may be summarily forfeited without notice. Plaintiff Innovative Nutraceuticals alleges that it attempted to import hemp materials that were exempt from the CSA definition of marijuana, but its goods were wrongfully seized and forfeited by U.S. Customs and Border Protection ("CBP") because CBP incorrectly concluded that these goods contained marijuana.  Plaintiff also alleges that it did not receive adequate notice of seizure and forfeiture proceedings.  Despite recent changes in the law clarifying that cannabis and hemp materials containing less than 0.3% tetrahydrocannabinol ("THC") are exempt from the CSA definition of marijuana, Plaintiff alleges that CBP continues to wrongfully seize and forfeit goods containing less than 0.3% THC.  Plaintiff's Second Amended Complaint (the "SAC") seeks injunctive relief regarding future shipments of hemp products, money damages, and the return of seized shipments.  Although Plaintiff's SAC alleges several claims for relief, nearly all of them are subject to dismissal.

This Court lacks jurisdiction over Plaintiff's claims for injunctive relief because Plaintiff has failed to plead that it is in imminent danger of suffering future harm; Plaintiff has not alleged that it expects the government to wrongfully seize and forfeit future shipments of its goods.  The Court also lacks jurisdiction over Plaintiff's Federal Rule of Criminal Procedure 41(g) and 18 U.S.C. § 983(e) claims related to seizures that occurred outside this district.  The Court lacks jurisdiction over Plaintiff's Little Tucker Act Claim because Plaintiff fails to plead a cognizable predicate violation for Tucker Act jurisdiction and because the Civil Asset Forfeiture Reform Act ("CAFRA") is the exclusive remedy to set aside a civil forfeiture.  Plaintiff's Federal Tort Claims Act ("FTCA") claim is similarly subject to dismissal as CAFRA provides the exclusive remedy to set aside a civil forfeiture.  In addition, the detention of goods exception to the

1

FTCA precludes Plaintiff's claims for relief. The SAC fails to state claims for relief with respect to a seizure CBP remitted to Plaintiff following Plaintiff's explicit written waiver and release of claims against the United States. Similarly, the SAC fails to state a claim for relief for the 2015 Los Angeles seizure because, as Plaintiff acknowledges, it filed an administrative petition that CBP considered prior to making its determination regarding the disposition of the seizure and following CBP's denial of that administrative petition, Plaintiff elected not to initiate judicial forfeiture proceedings. Although Plaintiff has alleged several creative bases for relief in the SAC, it cannot overcome the multiple jurisdictional and other defects noted above. For those reasons, the Court should dismiss the first, fourth, fifth, and ninth causes of action in their entirety; the third and sixth causes of action as to claims that did not arise in this district; and all claims and causes of action related to the 2015 Los Angeles and Kentucky seizures.

## II.    STATEMENT OF FACTS[2]

Plaintiff is an importer of "crushed hemp plant materials" from which it produces and markets cannabidiol (CBD) products. Second Amended Complaint ("SAC") ¶ 10. "Industrial hemp" is derived from the cannabis sativa plant. *New Hampshire Hemp Council, Inc. v. Marshall*, 203 F.3d 1, 6 (1st Cir. 2000) ("the plant from which the industrial products are derived is cannabis sativa"); *Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1085 n.2 (9th Cir. 2003) ("[t]he industrial hemp plant itself . . . falls under the definition of marijuana"). Although marijuana is a Schedule I controlled substance, its definition exempts "the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination." 21 U.S.C. § 802(16). Plaintiff alleges that the

---

[2] Plaintiff's allegations in the complaint are taken as true only for purposes of this motion to dismiss.

property at issue is comprised of crushed hemp stalk and seed materials that are exempted from the definition of marijuana, which are legal to import into the United States.  SAC, ¶ 13.

The SAC describes four instances in which the government seized hemp goods from Plaintiff and one instance in which the government seized CBD oil from a non-party as the factual basis for its claims:

### A.    2015 Los Angeles Seizure

Plaintiff alleges that on December 6, 2015, DHS seized hemp plant goods it had imported via Los Angeles International Airport ("LAX").  SAC, ¶ 44.  Plaintiff alleges that U.S. Customs and Border Protection tested the goods and found that they tested positive for CBD.  SAC, ¶ 45.  Plaintiff alleges that it filed a petition with CBP for administrative review of the seizure.  SAC, ¶ 46.  Plaintiff's administrative petition acknowledges that CBP sent Plaintiff a Notice of Seizure and Information to Claimants letter dated February 4, 2016.  *See* Declaration of Jasmin Yang ("Yang Decl."), Exhibit 1.  Included as Exhibit D to Plaintiff's Administrative Petition is an Election of Proceedings form signed by Plaintiff wherein Plaintiff elected (among options ranging from the initiation of court action and judicial forfeiture proceedings to the abandonment of the property) that CBP consider its petition administratively before initiating forfeiture proceedings.  *Id.* at Exhibit 2.  Plaintiff alleges that CBP denied Plaintiff's administrative petition, stating that CBP determined that the imported materials met the definition of marijuana and were comprised of hemp flowers not exempted from the CSA definition of marijuana.  SAC, ¶ 47.  Despite being offered multiple opportunities to initiate judicial forfeiture proceedings after CBP denied the administrative petition, Plaintiff elected not to pursue judicial forfeiture.  Yang Decl., Ex. 3.  Plaintiff alleges the government destroyed the hemp goods contained in this shipment.  SAC, ¶ 48.

### B.    2017 New Jersey Seizure

Plaintiff alleges that on January 25, 2017, CBP seized a shipment of Plaintiff's CSA-exempt crushed hemp goods in Newark, New Jersey.  SAC, ¶ 49.  Plaintiff alleges

3

1    that the shipment was destroyed because it allegedly tested positive for marijuana.  SAC,
2    ¶ 51.

3    **C.    2017 Los Angeles Seizure**

4    Plaintiff alleges that on or about November 25, 2017, CBP detained one of its
5    CSA-exempt hemp shipments for testing.  SAC, ¶ 55.Plaintiff alleges that it was
6    informed in a February 26, 2018 e-mail that CBP would not be providing Plaintiff with
7    formal notice of the seizure and that CBP had already summarily forfeited the goods
8    because testing revealed the presence of THC extracts in the materials.  SAC, ¶ 58.

9    **D.    2018 Louisville Seizure**

10   Plaintiff alleges that on or about March 14, 2018, CBP seized another of its CSA-
11   exempt hemp shipments.  SAC, ¶¶ 62-63.  Plaintiff alleges that CBP tested the goods and
12   they tested positive for trace amounts of THC.  SAC, ¶ 64.  Plaintiff alleges that CBP
13   agreed not to destroy the goods.  SAC, ¶ 65.  Plaintiff filed an administrative petition for
14   the return of the goods on April 17, 2018.  SAC, ¶ 65.  Plaintiff alleges that CBP
15   returned the goods following Plaintiff's execution of a Hold Harmless Agreement.  SAC,
16   ¶ 66.  In the Hold Harmless Agreement, Plaintiff released and forever discharged "the
17   United States, its officers, agents, servants and employees, their heirs, successors, or
18   assigns, from any and all action, suits, proceedings, debts, dues, contracts, judgements,
19   damages, claims, and/or demands whatsoever in law or equity … which it … ever had,
20   now have, or may have in the future in connection with the detention, seizure, and/or
21   release by the United States Customs and Border Protection" of the property at issue.
22   Yang Decl., Exhibit 4.  Plaintiff acknowledges that CBP remitted the goods.  SAC, ¶ 67.

23   **E.    Enactment of the Farm Bill Exempts Marijuana Containing Less than
24        0.3% THC from the Definition of Marijuana**

25   The "Agriculture Improvement Act of 2018," (colloquially known as the "Farm
26   Bill") passed by the Senate on December 11, 2018, and the House of Representatives on
27   December 12, 2018, amended the CSA to exempt hemp cannabis products containing up
28   to 0.3% THC from the definition of marijuana.  H.R. 2, 115th Cong. §§ 10113, 12619

4

(2018)[3].  Any cannabis plant or product that contains more than 0.3% THC on dry weight basis will still be considered marijuana under the CSA.

### F.   Doctor's Choice Shipments

Plaintiff alleges generally that notwithstanding passage of the Farm Bill, CBP continues to seize and summarily forfeit hemp goods containing less than 0.3% THC. SAC, ¶ 70.  However, Plaintiff does not allege any instances of CBP seizing its shipments after the Farm Bill.  It alleges only that non-party and putative class member Doctor's Choice Pharmacy ("Doctor's Choice") had two of its CSA-exempt CBD oil shipments seized between May and June 2019.  SAC, ¶ 71.  Plaintiff alleges that Doctor's Choice did not receive a notice of seizure letter for its seized shipment and that on other occasions, Doctor's Choice successfully imported CBD oil.  SAC, ¶¶ 72-73.

## III.   REGULATORY FRAMEWORK

### A.   Marijuana under the CSA

Marijuana is defined by Congress in the CSA as the entire Cannabis sativa plant, and its extracts and derivatives, with exemptions for mature stalks, extracts thereof, and certain seed extracts.  21 U.S.C. § 802(16).[4]  The portions of the marijuana plant exempted from the definition of marijuana under the CSA are those which are known to

---

[3] Section 10113 provides that "hemp" is "the plant *Cannabis sativa L.* and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or now, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."

[4] Specifically, marijuana is defined in the CSA as

all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16).

contain little to no psychoactive THC.  *See Hemp Indus.*, 333 F.3d at 1085 ("Hemp seeds and oil typically contain minuscule trace amounts of THC, less than 2 parts per million [(0.0002%)] in the seed and 5 parts per million [(0.0005%)] in the oil").

Prior to the enactment of the Farm Bill, the CSA's definition of marijuana did <u>not</u> include or exclude material based on the quantity of THC present in that material, but instead included or excluded material from the definition of marijuana based on the portion of the plant from which it is derived.  *See New Hampshire Hemp Council, Inc.*, 203 F.3d at 6.  However, the quantity of THC present in marijuana material can be used to determine which part of the plant it is derived from.  Scientific studies have shown that "cannabinoids, such as tetrahydrocannabinols (THC), cannabinols (CBN) and cannabidiols (CBD), are found in the parts of the cannabis plant that fall within the CSA definition of marijuana, such as the flowering tops, resin, and leaves.[5]"  DEA, Diversion Control Division, *Clarification of the New Drug Code (7350) for Marijuana Extract*, https://www.deadiversion.usdoj.gov/schedules/marijuana/m_extract_7350.html ("*Clarification*").

> According to the scientific literature, cannabinoids are not found in the parts
> of the cannabis plant that are excluded from the CSA definition of
> marijuana, except for trace amounts (typically, only parts per million)[6] that
> may be found where small quantities of resin adhere to the surface of seeds
> and mature stalk.[7]  Thus, based on the scientific literature, it is not practical
> to produce extracts that contain more than trace amounts of cannabinoids
> using only the parts of the cannabis plant that are excluded from the CSA
> definition of marijuana, such as oil from the seeds.  The industrial processes

---

[5] H. Mölleken and H. Hussman.  Cannabinoid in seed extracts of <u>Cannabis sativa</u> cultivars. *J. Int. Hemp Assoc.* 4(2): 73-79 (1997).

[6] *See id.; see also* S. Ross et al., GC-MS Analysis of the Total Δ9-THC Content of Both Drug- and Fiber-Type Cannabis Seeds, *J. Anal. Toxic.,* Vol. 24, 715-717 (2000).

[7] H. Mölleken, *supra.*

used to clean cannabis seeds and produce seed oil would likely further diminish any trace amounts of cannabinoids that end up in the finished product.

*Clarification. See also Hemp Indus.*, 333 F.3d at 1085.

Prior to the Farm Bill, U.S. Customs and Border Protection, followed guidance from the Drug Enforcement Agency ("DEA") and maintained that while material derived from the portions of the marijuana plant exempted from the CSA's definition of marijuana may contain <u>trace amounts</u> (parts per million) of THC, materials containing <u>greater than trace amounts</u> of THC are derived from those portions of the marijuana plant which are a Schedule I controlled substance under the CSA, and are thus themselves Schedule I controlled substances. *Clarification; See also* 21 U.S.C. § 802(16) (marijuana includes "every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin"); *see also United States v. Proyect*, 989 F.2d 84, 87-88 (2d Cir. 1993) (rejecting argument that low THC material is exempt from CSA, noting "extremely broad scope of the statutory definition" of marijuana).

Following the enactment of the Farm Bill, hemp and its derivatives are exempt from the definition of marijuana under the CSA if they contain less than 0.3% THC on a dry weight basis.

### B.    Legal status and seizures of Schedule I controlled substances.

The CSA provides that all controlled substances in Schedule I and Schedule II (as defined in 21 U.S.C. §§ 802(6) and 812) that are possessed, transferred, sold or offered for sale in violation of the Act will be deemed contraband, seized and *summarily forfeited* to the United States.  21 U.S.C. § 881(f)(1) (emphasis added).  The Controlled Substances Import and Export Act (21 U.S.C. § 951, *et seq.*) ("CSIEA") incorporates by reference this contraband forfeiture provision of 21 U.S.C. § 881.  *See* 21 U.S.C. § 965.  Accordingly, in the case of a seizure of a Schedule I or Schedule II controlled substance, the CBP Fines, Penalties, and Forfeitures Officer or his designee will contact the appropriate DEA official responsible for issuing permits authorizing the importation of

such substances (*see* 21 C.F.R. § 1312).  If upon inquiry, the Fines, Penalties, and Forfeitures Officer or his designee is notified that no permit for lawful importation has been issued, he will declare the seized substances contraband and forfeited pursuant to 21 U.S.C. § 881(f).  Inasmuch as such substances are Schedule I and Schedule II controlled substances, the notice procedures set forth in 19 C.F.R. § 162.45 are inapplicable—*meaning that a seizure notice is not required for Schedule I or Schedule II substances. See* 19 C.F.R. § 162.45a.

**C.     Regulatory Framework Governing Civil Asset Forfeiture**

CAFRA, the Civil Asset Forfeiture Reform Act of 2000, codified at 18 U.S.C. § 983, governs all civil asset forfeiture proceedings[8], and provides, in pertinent part,

(e) Motion to set aside forfeiture.--

(1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if--

(A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and

(B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

…

*(5) A motion filed under this subsection shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute.*

(emphasis added.)

As discussed below, a motion to set aside a forfeiture under 18 U.S.C. § 983(e) is

---

[8] 21 U.S.C. § 881 is a civil forfeiture statute.  *Eggleston v. State of Colo.*, 873 F.2d 242, 245 (10th Cir. 1989).

8

the exclusive remedy when the claimant asserts that it did not receive adequate notice of a seizure and civil forfeiture proceedings.  Although there are several reasons necessitating dismissal of the SAC, many of Plaintiff's claims are precluded by the exclusive remedy provision of CAFRA.

## IV.   ARGUMENT

### A.   Motion to Dismiss Standard

Several causes of action of the SAC are subject to dismissal with prejudice for three reasons: (1) this Court lacks subject matter jurisdiction under Rule 12(b)(1); (2) venue is improper under Rule 12(b)(3); and (3) the complaint fails to state a claim for relief can be granted under Rule 12(b)(6).

#### 1.   Lack of Jurisdiction

The plaintiff has the burden of proving jurisdiction to survive a motion to dismiss. *Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).  A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence.  *White v. Lee*, 227 F.2d 1214, 1242 (9th Cir. 2000).

As discussed below, the Court lacks jurisdiction over Plaintiff's claims for several reasons: (1) with respect to the first and ninth causes of action, Plaintiff has failed to allege that it has standing to make claims for future injunctive relief; (2) with respect to the fourth cause of action, Plaintiff has failed to establish an underlying predicate violation that would give the Court jurisdiction over its Little Tucker Act claim; (3) with respect to the fourth and fifth causes of action, district courts are without jurisdiction to review the merits of a completed forfeiture; and (4) Plaintiff's election of an administrative petition and its election not to pursue judicial forfeiture proceedings concerning the 2015 Los Angeles seizure renders this Court without jurisdiction to adjudicate all claims arising out of that seizure.

#### 2.   Lack of Venue

The plaintiff has the burden of proving venue to survive a motion to dismiss.  *See*

1   *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)

2   ("Plaintiff had the burden of showing that venue was properly laid in the Northern

3   District of California."). When the plaintiff asserts multiple claims, it must establish that

4   venue is proper as to each claim. *Adobe Systems, Inc. v. Childers*, 2011 WL 566812 at

5   *7 (N.D. Cal. Feb. 14, 2011) (citation omitted). "In ruling on a motion to dismiss for

6   improper venue, the allegations in the complaint need not be accepted as true, and the

7   court may consider evidence outside the pleadings. *Allstar Mktg. Grp., LLC v. Your

8   Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009) (internal citations

9   omitted). As discussed below, with respect to the third and sixth causes of action, venue

10  is improper with respect to Plaintiff's claims under Federal Rule of Criminal Procedure

11  41(g) and section 983(e) for seizures in Kentucky, New Jersey, Colorado, and the Virgin

12  Islands because they may not be brought in this district.

13              3.   <u>Failure to State a Claim</u>

14          A Rule 12(b)(6) motion tests the sufficiency of the allegations in the complaint

15  and should be granted where the complaint fails to assert a cognizable legal theory or

16  contains insufficient factual allegations to support a cognizable legal theory. *Balistreri

17  v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to

18  dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

19  claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

20  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

21  facial plausibility when the plaintiff pleads factual content that allows the court to draw

22  the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

23  "When there are well-pleaded factual allegations, a court should assume their veracity

24  and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at

25  1950. Mere conclusory statements or legal conclusions "are not entitled to the

26  assumption of truth." *Id.*

27          A court may, however, consider certain materials—documents attached to the

28  complaint, documents incorporated by reference in the complaint, or matters of judicial

notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (noting that a court may consider a document whose contents are alleged in a complaint, so long as no party disputes its authenticity) (overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).

Several of the causes of action in the SAC are subject to dismissal for failure to state a claim: (1) Plaintiff's Little Tucker Act claim is precluded by the exclusive remedy provisions of CAFRA; (2) Plaintiff's FTCA claim is precluded by the exclusive remedy provisions of CAFRA and by the detention of goods exception to the FTCA; and (3) Plaintiff's claims arising out of the Kentucky seizure have been waived and released by the Hold Harmless Agreement.

## B.   Plaintiff Lacks Standing to Bring Claims for Injunctive Relief Under the Administrative Procedure Act.

Plaintiff's first and ninth causes of action seek injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA") and request an injunction preventing the United States from summarily forfeiting or destroying seized hemp and CBD materials during the pendency of this action and in the future. Because Plaintiff has not plead that it intends to import legal hemp materials subject to seizure in the future, the Court should dismiss these causes of action because Plaintiff has failed to establish standing for the injunctive relief it seeks.

Under Article III, § 2 of the U.S. Constitution, federal courts can only hear live "cases" or "controversies." "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 708 (2013) (citation and internal quotes omitted). The "irreducible

constitutional minimum" of standing consists of three elements: (1) the plaintiff must have suffered an injury-in-fact; (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The "injury in fact" requirement requires a plaintiff to allege an injury that is both "concrete and particularized." *Spokeo*, *Inc. v. Robins*, 136 S.Ct. 1540, 1545 (2016). Plaintiff's injury must be "actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560). A threatened injury may satisfy the "injury in fact" requirement, but only where the plaintiff is in imminent danger of sustaining a direct injury as a result of the challenged conduct. *See Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947-48 (9th Cir. 2002) (citing *Friends of the Earth*, *Inc. v. Laidlaw*, 528 U.S. 167, 180-81 (2000)).

Plaintiff has not plead sufficient facts demonstrating that it has standing to bring claims for future injunctive relief. Plaintiff has merely plead that it "obtains crushed hemp plant materials from vendors and produces and markets CBD products from those materials." SAC, ¶ 10. Nowhere in the SAC has Plaintiff alleged that it intends to import future shipments of purportedly legal hemp plant materials and that it is in imminent danger of CBP seizing or forfeiting those future shipments. The allegations in the SAC are therefore insufficient to confer standing necessary for the injunctive relief Plaintiff seeks.

Plaintiff does allege that U.S. Customs and Border Protection seized goods from putative class member Doctor's Choice" after the enactment of the 2018 Farm Bill. SAC, ¶¶ 70-77. However, Plaintiff may not rely on the claims or injuries of unnamed class members or non-parties to establish standing for future injunctive relief. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044-45 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."). In *Hodgers-Durgin*, the named plaintiffs sought injunctive relief claiming that they were the victims of unreasonable searches by CBP. *Id.* at 1038-39.

12

Plaintiff sought to rely on the experiences of unnamed class members who had suffered more recent and frequent stops and searches to establish standing for prospective injunctive relief.  *Id.* at 1044.  Although the Ninth Circuit noted that had those individuals been named as plaintiffs, they might have been able to demonstrate standing for future injunctive relief, the Ninth Circuit held the plaintiffs did not have standing, noting "Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek."  *Id.* at 1045.  Similarly, because Plaintiff has not made any allegations suggesting it is or will be in danger of suffering imminent harm and because Plaintiff may not rely on the standing of third parties, the Court should dismiss the first and ninth causes of action of the SAC for lack of standing.

## C. The Court Lacks Venue for the Third and Sixth Causes of Action with Respect to Claims Arising out of the New Jersey, Kentucky, and Doctor's Choice Seizures.

By its express language, a motion for return of property under Federal Rule of Criminal Procedure 41(g) "must be filed in the district where the property was seized." Fed. R. Crim. P. 41(g).  Here, the SAC alleges that the 2017 NJ seizure was "in Newark, New Jersey," SAC, ¶ 49, and the 2018 seizure was seized "at the Louisville, Kentucky airport."  SAC, ¶ 62.  Thus, pursuant to Rule 41(g), the motion for return of property with respect to those assets must be filed in the District of New Kersey and the Western District of Kentucky, and not this district.  *Dickerson v. United States*, 2012 WL 3758454 (N.D. Ohio June 5, 2012) (dismissing for lack of jurisdiction motion filed in Ohio when property was seized in Michigan).

To the extent that this Court considers Plaintiff's vaguely referenced seizures involving Doctor's Choice, those also must be filed in another district because the SAC suggests that the goods were seized outside this district.  While Plaintiff fails to identify the precise location of the seizure, it states that Doctor's Choice "is located in the U.S. Virgin Islands and imports legal CBD oil under the 0.3% THC limit from suppliers in

Colorado." SAC, ¶ 71.  Thus, any seizure likely took place in either USVI or Colorado, and any proper Rule 41(g) return of property motion is properly venued in those latter districts and not this one.[9]  Accordingly, Plaintiff's causes of action under Rule 41(g) and 18 U.S.C. §983(e)(5) for non-Los Angeles seizures must be dismissed.  Fed. R. Civ. P. 12(b)(3); *see United States v. Howell*, 354 F.3d 693, 695 (7th Cir. 2004).

### D.   Plaintiff's Fails to State a Claim Under the Little Tucker Act in its Fourth Cause of Action

#### 1.   Plaintiff Fails to Plead the Existence of a Basis for Money Damages that Would Give the Court Jurisdiction under the Little Tucker Act

Plaintiff's fourth cause of action seeks money damages not to exceed $10,000 for each of the four seizures described in the SAC.  However, the Court should dismiss this cause of action because Plaintiff has failed to plead any basis for money damages, leaving the Court without Tucker Act jurisdiction.  The Tucker Act waives the government's traditional sovereign immunity and gives district courts jurisdiction to hear claims against the government in a limited set of circumstances, including claims founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.  28 U.S.C. §§ 1346(a)(2), 1491.  The Court of Federal Claims and district courts have concurrent jurisdiction over claims of $10,000 or less.  *Id.*  The Tucker Act is "only a jurisdictional statute; it does not create any substantive cause of action enforceable against the United States for money damages.  *Matsuo v. United States*, 416 F. Supp. 2d 982, 989-90 (D. Haw. 2006) (citing *United States v. Testan*, 424 U.S. 392, 398 (1976).  To fall within the Tucker Act's waiver of sovereign immunity, the plaintiff must sue for money the

---

[9] To the extent that the location(s) of the two Doctor's Choice seizures is ambiguous, this fact must be construed against the plaintiff, as it "bears the burden of proving venue is proper."  *Mikhaylov v. United States*, 29 F. Supp. 3d 260, 266–67 (E.D.N.Y. 2014).  Although plaintiff must only make a "prima facie showing" of venue, id., it has failed to even meet that standard, as the only locations identified in the SAC with respect to the Doctor's Choice seizures are Colorado and USVI.

14

1   Government improperly exacted or retained, or the plaintiff *must identify a separate*

2   *source of substantive law that creates the right to money damages. Id.* (citing *Fisher v.*

3   *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).  Where the plaintiff has

4   not paid money that it alleges the government owes it as a refund, the plaintiff must

5   allege that a particular provision of law grants it a right to be paid a certain sum.  *Id.* at

6   990.  The absence of a money mandating source is fatal to Tucker Act jurisdiction.  *Id.*

7          Plaintiff cites to two provisions in its Tucker Act claim, 18 U.S.C. § 983(a) and

8   the Fifth Amendment.  SAC, ¶ 88.  Neither provides a basis for money damages.  The

9   Fifth Amendment Due Process clause is not "money mandating" in the context of a

10  Tucker Act claim.  *Sterling v. United States*, 749 F. Supp. 1202, 1208 (E.D.N.Y. 1990)

11  ("Since the Due Process Clause of the Fifth Amendment does not mandate the payment

12  of money damages, the Court of Claims is without jurisdiction"); *Collins v. United*

13  *States*, 67 F.3d 284, 288 (Fed. Cir. 1995) (noting that "the trial court did not have

14  jurisdiction over money claims that are based upon an alleged violation by the

15  government of the due process clause.  This is so because the due process clause does

16  not obligate the government to pay money damages."); *Crocker v. U.S.*, 37 Fed. Cl. 191,

17  194-95 (1997) ("It is settled that the remedy for violations of the Due Process Clause of

18  the Fifth Amendment or the Search and Seizure clause of the Fourth Amendment is not

19  the payment of money damages.")

20         Plaintiff's reliance on the Takings Clause of the Fifth Amendment similarly fails

21  to establish the requisite basis for Little Tucker Act jurisdiction because the definition of

22  a "taking" involves lawful government action that is inconsistent with Plaintiff's

23  allegations of unlawful forfeitures in the SAC.  In *Crocker v. U.S.*, the court discussed

24  the distinction between a compensable taking (the appropriation of private property for

25  public use under the powers of eminent domain) and a valid forfeiture (the regulation of

26  property in a manner which seeks to prevent the continued use of private property in

27  ways detrimental to society).  37 Fed. Cl. at 195.  The plaintiff in *Crocker* had alleged

28  that the DEA failed to properly consider its timely claim prior to completing

15

administrative forfeiture proceedings of money seized in connection with a drug-related arrest.  In dismissing the plaintiff's Tucker Act claim, the *Crocker* court noted that implicit in stating a takings claim is the plaintiff's concession of the lawfulness of the government's actions that resulted in the alleged "taking."  *Id.* ("The allegation must not be that the Government's conduct in and of itself violated the law, but that the effect of a valid exercise of sovereign authority resulted in the taking of private property for public use, but without payment.").  As in *Crocker*, Plaintiff is claiming that the United States acted unlawfully in forfeiting allegedly legal hemp goods and in allegedly failing to provide notice of seizure and forfeiture proceedings.  The Takings Clause does not confer Tucker Act jurisdiction in situations where the claimant is alleging that the government has acted wrongfully in failing to provide adequate notice of a seizure or forfeiture.  The Fifth Amendment Takings clause cannot constitute an underlying jurisdictional basis for Plaintiff's Little Tucker Act claim.

Similarly, nothing in 18 U.S.C. § 983 provides a statutory basis for money damages.  Because Plaintiff has not alleged any independent statutory or constitutional basis for money damages, this Court is without jurisdiction over Plaintiff's Little Tucker Act claim and should dismiss Plaintiff's Fourth Cause of Action.

2. <u>18 U.S.C. § 983(e) is the Exclusive Remedy for Allegedly Wrongful Seizures</u>

Apart from the jurisdictional defect with its Little Tucker Act claim, the Court should dismiss this claim because 18 U.S.C. § 983(e)(5) is the exclusive remedy to set aside a declaration of forfeiture under a civil forfeiture statute for lack of notice.  CAFRA creates the framework for addressing administrative forfeiture claims and provides that a claimant may set aside an administrative forfeiture for lack of notice under 18 U.S.C. §983(e).  CAFRA provides for the sole and limited waiver of sovereign immunity for notice-based claims arising out of civil forfeiture proceedings.  Section 983(e)(5) provides "A motion filed under this subsection shall be the *exclusive remedy* for seeking to set aside a declaration of forfeiture under a civil forfeiture statute."

16

Waivers of sovereign immunity, such as § 983(e), must be strictly construed in favor of the government. *S.E.C. v. Credit Bancorp*, *Ltd.*, 297 F.3d 127, 136 (2d Cir. 2002).

Courts have routinely interpreted CAFRA's exclusive remedy to bar suits seeking relief under alternative grounds. For instance, in *Mikhalyov v. United States*, 29 F. Supp.3d at 272, the court found it had no jurisdiction to adjudicate plaintiff's *Bivens* claims arising out of the DEA's forfeiture of $195,600 because 18 U.S.C. § 983(e) is the sole remedy following an administrative forfeiture. *See also Bailey v. Patterson*, 2006 WL 2642543 at *2 (D.S.C. Sept. 13 2000) (holding that exclusivity of 18 U.S.C. § 983(e)(5) as sole remedy for closed forfeiture barred § 1983 claim); *McKinney v. DEA*, 580 F. Supp.2d 1, 3-4 (D.D.C. 2008) (noting exclusivity of 18 U.S.C. § 983(e) as sole remedy following forfeiture); *Williams v. Drug Enf't Admin.*, 620 Fed.App'x 72, 74 (3d Cir. 2015).

Although plaintiffs have been creative in attempting to characterize their wrongful forfeiture claims as *Bivens*, FTCA, or Section 1983 claims, courts have uniformly rejected these attempts in light of the exclusive remedy language of 18 U.S.C. § 983(e)(5). The sole remedy for an allegedly wrongful forfeiture under a civil forfeiture statute is 18 U.S.C. § 983(e). CAFRA's exclusivity provision bars Plaintiff's claim under the Little Tucker Act.

3. <u>The Court Lacks Jurisdiction to Review the Merits of the Forfeitures</u>

The gravamen of Plaintiff's SAC is that the United States seized hemp materials that were lawful under the CSA (prior to the passage of the Farm Bill) and that the United States continues to seize hemp materials that are lawful (under 0.3% THC) following passage of the Farm Bill. However, once an agency completes an administrative forfeiture, the courts may not re-investigate the merits of the challenged action and may only review the action to ensure that proper notice was provided under 18 U.S.C. § 983(e).

Because administrative forfeiture is a procedure that is handled entirely by the Executive Branch through the federal law enforcement agency that conducted or adopted

17

the seizure, there is no judicial review of any aspect of the administrative proceedings other than that necessary to ensure that the agency conducting the proceedings followed procedures that afforded the owners of the property due process of law.  Cassella, *Asset Forfeiture Law in the United States*, § 5-1, p. 179-80 (1st ed. 2007).  District courts have no jurisdiction to consider the merits of the underlying forfeiture, including whether there was probable cause for the initial seizure.  *Id.*  In addition, once an agency has completed an administrative forfeiture, the courts may not re-investigate the merits of the challenged action.  *See e.g., United States v. King*, 442 Fed. Appx. 212, 213 (6th Cir. 2011) (affirming district court's refusal to review claimant's Fourth Amendment challenge to administrative forfeiture); *Mesa Valderrama v. United States*, 417 F.3d 1189, 1196 (11th Cir. 2005) (claimant may only seek relief under Section 983(e) when the Government has failed to comply with the notice requirements; he may not challenge the forfeitability of the property); *United States v. Shigemura*, 664 F.3d 310, 312 (10th Cir. 2011) (court lacks jurisdiction to review merits of administrative forfeiture where no claim filed); *McKinney v. U.S. Dept. of Justice*, 580 F. Supp. 2d 1, 4 (D.D.C. 2008) (court lacks jurisdiction to review merits of administrative forfeiture under § 983(e) because Congress has not otherwise waived sovereign immunity); *United States v. Hill,* 2014 WL 971748 at *3 (D. Vt. Mar. 12, 2014) (declining to address argument that currency was seized illegally); *United States v. Pickett*, 2011 WL 3876974 at *2 (E.D.N.Y. Sept. 1, 2011) (declining to adjudicate attack on merits of forfeiture action); *Diaz v. United States*, 517 F.3d 608, 610-11 (2d. Cir. 2008) (noting that once an administrative forfeiture is completed, a district court has limited equitable jurisdiction only to "determine whether proper procedural safeguards were observed"); *Mikhaylov*, 29 F. Supp. 2d at 271 n.26; *Cohen-Sanchez v. United States ex rel. Drug Enforcement Admin.*, 2012 WL 1150760 at *3 (D.N.J. Apr. 5, 2012) ("Once the seized property is administratively forfeited, the district court is divested of jurisdiction to review the merits of the forfeiture action" and "retains limited jurisdiction to review whether an interested party received adequate notice of administrative proceedings.").

1   Not only is Plaintiff's exclusive remedy for alleged lack of notice associated with
2   the forfeitures a motion under 18 U.S.C. § 983(e), but the Court's inquiry is limited to
3   whether adequate notice was provided.  If adequate notice was not provided, the proper,
4   and only, remedy available is to set aside the forfeiture.  Plaintiff's argument is
5   essentially that the goods at issue were not the proper subject of forfeiture as they do not
6   constitute controlled substances.  This constitutes a collateral attack on the merits of the
7   forfeiture decision and is not permitted under CAFRA.

8   **E.    Plaintiff Fails to State a Claim under the FTCA in its Fifth Cause of**
9   **Action**

10         1.    <u>CAFRA is the Exclusive Remedy</u>

11   The United States incorporates by reference the arguments made in Section D2,
12   *supra*, and reiterates that 18 U.S.C. § 983(e) is the sole remedy for an allegedly wrongful
13   forfeiture under a civil forfeiture statute.

14         2.    <u>The Detention of Goods Exception to the FTCA Bars Plaintiff's</u>
15   <u>Claim</u>

16   Although the Federal Torts Claims Act ("FTCA") waives the government's
17   immunity for the torts of its employees, claims arising from the detention of goods by
18   law enforcement officers are excepted from that waiver.  28 U.S.C. § 2680(c).  The
19   detention of goods exception to the FTCA preserves the federal government's immunity
20   from suits arising from "the detention of any goods, merchandise, or other property by
21   any officer of customs or excise or any other law enforcement officer."  *Id.*  CAFRA
22   amended 28 U.S.C. § 2680(c) to add a re-waiver of the FTCA when:

23         (1) the property was seized for the purpose of forfeiture under any provision
24         of Federal law providing for the forfeiture of property other than as a
25         sentence imposed upon conviction of a criminal offense;

26         (2) the interest of the claimant was not forfeited;

27         (3) the interest of the claimant was not remitted or mitigated (if the property
28         was subject to forfeiture); and

19

1  (4) the claimant was not convicted of a crime for which the interest of the

2  claimant in the property was subject to forfeiture under a Federal criminal

3  forfeiture law.

4  28 U.S.C. § 2680(c)(1)-(4).

5       Unless all four of the criteria in 28 U.S.C. § 2680(c)(1)-(4) are satisfied, the

6  detention of goods exception is a bar to Plaintiff's FTCA claim.  The Ninth Circuit has

7  held that to satisfy § 2680(c)(1), it is not sufficient that the goods are seized; the goods

8  must have been seized solely for the purpose of forfeiture.  *Foster v. United States*, 522

9  F.3d 1071, 1075 (9th Cir. 2008) ("the fact that the government may have had the

10  possibility of a forfeiture in mind when it seized Plaintiff's property" was insufficient to

11  bring the detention within the scope of CAFRA's re-waiver "when criminal investigation

12  was [also] a legitimate purpose of the initial seizure.").  In *Smoke Shop LLC v. United*

13  *States*, 761 F.3d 779, 785 (7th Cir. 2014), the Seventh Circuit upheld the dismissal of an

14  FTCA claim arising out of the DEA's seizure of incense products containing synthetic

15  cannabinoids under the detention of goods exception.  In doing so, the Seventh Circuit

16  rejected the plaintiff's argument that the CAFRA re-waiver of the FTCA applied, finding

17  that the goods were not seized solely for the purpose of forfeiture, but in connection with

18  a possible drug crime.  *Id.*  Even though the plaintiff in Smoke Shop plead that the DEA

19  seized the goods solely for the purpose of forfeiture, the court noted that that statement

20  was the type of legal conclusion not entitled to the presumption of truth.  *Id.* (citing

21  *Ashcroft v. Iqbal*, 556 U.S. at 678).

22       For similar reasons, the detention of goods exception bars Plaintiff's FTCA claim.

23  First, Plaintiff has not plead, either explicitly or constructively, that the goods were

24  seized solely for the purpose of forfeiture (as opposed to being seized incident to law

25  enforcement activity and subject to testing).  Indeed, if anything, Plaintiff's allegations

26  suggest that U.S. Customs and Border Protection seized the goods to test them for

27  evidence of contraband.  SAC, ¶¶ 45, 51, 58, 64.  Second, in three out of four of the

28

1   seizures at issue, Plaintiff has plead that the hemp <u>was forfeited</u>[10], meaning that §

2   2680(c)(2) ("the interest of the claimant was <u>not forfeited</u>") cannot be satisfied.  Third,

3   with respect to the 2018 Kentucky seizure, Plaintiff "eventually obtained return of its

4   exempt hemp plant materials,[11]" meaning it cannot satisfy § 2680(c)(3) ("the interest of

5   the claimant was not remitted or mitigated").  The detention of goods exception to the

6   FTCA bars Plaintiff's FTCA claim.  The Court should dismiss Plaintiff's fifth cause of

7   action.

**F.  The Kentucky Seizure Cannot Form the Factual Basis for Any of Plaintiff's Claims**

     1.  <u>Plaintiff Released and Waived All of its Claims Related to the Kentucky Seizure in the Hold Harmless Agreement</u>

12       The clear and unambiguous language of the Hold Harmless Agreement operates as

13  a release of all of Plaintiff's claims against the United States arising out of the 2018

14  Kentucky seizure.  *See, e.g., Spence v. United States*, 629 F. Supp. 2d 1068, 1078-79

15  (E.D. Cal. 2009) *aff'd* 374 Fed. App'x 717 (9th Cir. 2010) (interpreting California law in

16  FTCA claim and finding that written release of claims operated as a complete bar to

17  plaintiff's claims); *Christakis v. Mark Burnett Prods.*, No. CV086864-GW, 2009 WL

18  1248947 at *4 (C.D. Cal. Apr. 27, 2009) (granting motion to dismiss on the basis that

19  waiver, release, and covenant not to sue clauses barred plaintiff's complaint for

20  defamation, tortious interference with contractual relations, and breach of good faith and

21  fair dealing).

22       Plaintiff alleges that U.S. Customs and Border Patrol conditioned the release of

23  Plaintiff's goods on the execution of a Hold Harmless Agreement and acknowledges that

24  it "eventually obtained return of its exempt hemp plant materials." SAC, ¶¶ 66-67.  The

---

[10] SAC ¶ 48 ("Plaintiff believes that the government destroyed the hemp materials contained in this shipment"), ¶ 51 ("Plaintiff learned the shipment had been destroyed by Defendant because it allegedly tested positive for marijuana"), ¶, 60 ("Plaintiff believes its property was summarily forfeited and destroyed").

[11] SAC, ¶ 67.

clear unambiguous language of the Hold Harmless agreement bars all of Plaintiff's causes of action arising from the 2018 Kentucky seizure.  The Hold Harmless Agreement provides in pertinent part:

> In consideration of the release of the above listed property to the above named party, I, Innovative Nutraceuticals, LLC, hereby forever release and forever discharge the United States, its officers, agents, servants, and employees, their heirs, successors, or assigns, from any and all actions, suits, proceedings, debts, dues, contracts, judgements, damages, claims and/or demands whatsoever in law or equity which it, its heirs, successors, or assigns ever had, now have, or may have in the future in connection with the detention, seizure, and/or release by the United States Customs and Border Protection of the above listed property.

Hold Harmless Agreement, Exhibit 4 to the Yang Decl.

Plaintiff's execution of the Hold Harmless Agreement operates as a release and waiver as to all of its causes of action arising out of the 2018 Kentucky seizure and cannot form the factual predicate for any of its claims for relief.

### 2. The Third and Sixth Causes of Action Must be Dismissed Because Plaintiff Admits CBP Remitted Its Goods.

Plaintiff alleges that it "obtained return of its exempt hemp plant materials."  SAC, ¶ 67.  Plaintiff's third cause of action, seeking return of property pursuant to Federal Rule of Criminal Procedure 41(g) is therefore moot and should be dismissed pursuant to Rule 12(b)(6).

Plaintiff does not allege that the assets subject to the 2018 Kentucky seizure were administratively forfeited.  *See* SAC, ¶¶ 62-69.  Indeed, plaintiff admits CBP remitted its goods.  SAC, ¶ 67.  Therefore, there is no administrative forfeiture decision to be "set aside," and Plaintiff's sixth cause of action must be dismissed as to the 2018 Kentucky seizure.

1
2

### G.    The 2015 Los Angeles Seizure Cannot Form the Factual Basis for Any of Plaintiff's Causes of Action

3      Although the gravamen of Plaintiff's complaint is that it did not receive adequate

4   notice or due process related to the seizures of the hemp material it was attempting to

5   import, Plaintiff's use of the 2015 Los Angeles Seizure as an example of lack of notice is

6   inconsistent with the relief it seeks.  Plaintiff elected to file an administrative petition

7   with U.S. Customs and Border Patrol regarding this seizure and chose not to initiate

8   judicial forfeiture proceedings (despite being afforded multiple opportunities to do so).

9   Having made its election, Plaintiff cannot use this lawsuit as an attempt to appeal the

10   United States' administrative decision regarding the 2015 Los Angeles Seizure.

11      Plaintiff's attempt to change course from an administrative petition to a judicial

12   one was expressly rejected in *Malladi Drugs & Pharm., Ltd. v. Tandy*, 552 F.3d 885, 890

13   (D.C. Cir. 2009).  In *Malladi*, the D.C. Circuit upheld the dismissal of plaintiff's

14   complaint asking either for the return of goods (approximately $1,400,000 of ephedrine

15   and pseudoephedrine) or judicial forfeiture proceedings after it elected administrative

16   remedies.  In doing so, the court noted, "Having waived its opportunity for judicial

17   forfeiture proceedings during the administrative process, Malladi may not now attempt

18   to correct its choice of remedy in federal court."  *Id.  See also English v. FBI*, No. 8:14-

19   CV-111, 2014 WL 3955807 at *2-*3 (D. Neb. Aug. 13, 2014) ("Once an individual has

20   elected to pursue the claim administratively, the forfeiture of property cannot be

21   collaterally attacked in federal court"); *Plumhof v. U.S. Customs and Border Patrol*,

22   2013 WL 2295666 at *6-*7 (S.D. Cal. May 24, 2013)(interpreting similar election of

23   remedies form and granting motion to dismiss and finding that there was no subject

24   matter jurisdiction where the plaintiff had elected to proceed with an administrative

25   petition).

26      The underlying facts associated with the 2015 Los Angeles seizure mirror the

27   situation in *Malladi*.  Plaintiff's SAC alleges that it filed an administrative petition

28   regarding the 2015 Los Angeles Seizure.  SAC, ¶ 46; Exhibit 2 to the Yang Decl.  One

of the attachments to Plaintiff's Administrative Petition is the Election of Remedies form that the United States sent to Plaintiff (that accompanied the Notice of Seizure and Information to Claimants letter[12] Plaintiff received).  In this Election of Remedies form, Plaintiff had the option of choosing one of five options concerning the disposition of the property: (1) to have CBP consider an administrative petition before the initiation of forfeiture proceedings; (2) an offer in compromise; (3) abandoning the property; (4) the initiation of judicial forfeiture proceedings (court action); or (5) administrative forfeiture proceedings.  As indicated in the form that Plaintiff signed, Plaintiff, after having considered the various options it could choose from, elected to file an administrative petition with CBP on October 28, 2016.[13]

As in *Malladi*, in light of the fact that Plaintiff was able to file an administrative petition with the United States that was considered on the merits, in addition to the arguments set forth above, Plaintiff has no due process or lack of notice claim related to this particular seizure because Plaintiff was, in fact, afforded an opportunity to file an administrative petition.  Plaintiff's fourth (Little Tucker Act) and sixth (18 U.S.C. § 983(e)(5)) causes of action both allege, inconsistently with the Administrative Petition that Plaintiff filed, that Plaintiff did not receive adequate notice of forfeiture proceedings and should be dismissed as to all claims arising out of the 2015 Los Angeles seizure.

## V.   THE COURT SHOULD DENY LEAVE TO AMEND

In the event the Court is inclined to grant this Motion, in whole or in part, the Court should deny Plaintiff leave to amend.  Although the Court should grant leave to amend when justice so requires, the Court may deny leave to amend if it determines that allegation of facts consistent with the challenged pleading could not possibly cure the deficiency or if plaintiff had several opportunities to amend its complaint and repeatedly

---

[12] The Notice of Seizure and Information to Claimant's Letter is dated February 4, 2016.

[13] In fact, after the administrative petition was denied, the United States repeatedly provided Plaintiff with the option of initiating judicial forfeiture proceedings, which Plaintiff chose not to exercise.  Yang Decl., ¶ 3.

1   failed to cure deficiencies. *Telesaurus VPC, LLC v. Power*, 623 F. Supp. 3d 998, 1003

2   (9th Cir. 2010).  Plaintiff has had several opportunities to plead its claims given that this

3   is Plaintiff's third iteration of its complaint.  In addition, amendment cannot cure the

4   Court's lack of jurisdiction in light of the standing, venue, and CAFRA exclusive

5   remedy issues.  Furthermore, Plaintiff cannot plead different facts concerning the 2015

6   LAX and Kentucky seizures that would overcome the issues concerning its failure to

7   state a claim.

8   **VI.   CONCLUSION**

9          For the foregoing reasons, the United States respectfully requests that the Court

10   dismiss, without leave to amend, the first, fourth, fifth, and ninth causes of action, the

11   third and sixth causes of action with respect to seizures that occurred outside this district,

12   and all causes of action with respect to 2015 Los Angeles and Kentucky seizures.

13

14

15   Dated: September 27, 2019                     Respectfully submitted,

16                                                 NICOLA T. HANNA
                                                   United States Attorney
17                                                 DAVID M. HARRIS
                                                   Assistant United States Attorney
18                                                 Chief, Civil Division
                                                   JOANNE S. OSINOFF
19                                                 Assistant United States Attorney
                                                   Chief, General Civil Section
20

21                                                    /s/ Jasmin Yang
22                                                 JASMIN YANG
                                                   Assistant United States Attorney
23
                                                   Attorneys for Defendant
24                                                 United States of America

25

26

27

28